UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-12268-RGS

JOHN B. CRUZ CONSTRUCTION CO., INC

v.

BEACON COMMUNITIES CORP., BEACON COMMUNITIES' SERVICES LLC, BEACON LENOX LLC, and BEACON LENOX 2 LLC

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT

March 4, 2025

STEARNS, D.J.

Before the court is a motion for summary judgment brought collectively by defendants Beacon Communities Corp., Beacon Communities' Services LLC, Beacon Lenox LLC, and Beacon Lenox 2 LLC (collectively, Beacon) against plaintiff John B. Cruz Construction Co., Inc. (Cruz or Cruz Construction) on all six counts of its Complaint involving a dispute over work on a City of Boston redevelopment project. For the following reasons, the court will allow the motion.

**BACKGROUND**

The facts, viewed in the light most favorable to Cruz Construction as the nonmoving party, are as follows. In December of 2016, Beacon received approval from Boston Housing Authority (BHA) to rehabilitate two

affordable housing developments located on Lenox Street and Camden Street (the Lenox/Camden Project or the Project) in the Lower Roxbury neighborhood of Boston. The Lenox/Camden Project was to consist of two phases, with work on Camden occurring first. The Camden phase of the Project, which was funded by the state, involved the rehabilitation of 72 housing units. The Lenox phase of the Project, which was federally funded, involved 285 units and thus the relocation of a greater number of residents.

After BHA selected Beacon as the developer of the Lenox/Camden Project, BHA expressed its desire to Beacon to have a minority-owned business entity (MBE) involved. BHA suggested that Beacon reach out to Cruz Construction, a black-owned general contractor. Cruz's sister company, Cruz Development Corp., had submitted an unsuccessful bid on the Project in competition with Beacon. In July of 2016, Pamela Goodman, then-President of Beacon Communities' Services LLC, contacted John B. Cruz III, the President of Cruz Construction, to solicit Cruz's interest in participating as "the general contractor member" of Beacon's Project team. Compl. ¶ (Dkt. # 1-1) 7. John Cruz interpreted Goodman's inquiry as an invitation to Cruz Construction to apply for the role of general contractor on the Lenox and Camden phases of the Project on a negotiated bid price basis – Cruz Construction would then provide a negotiated bid price that Beacon would

test for competitiveness. In contrast, Goodman avows that she only intended to see whether Cruz Construction would be interested in performing pre-construction services on the Camden and Lenox phases. The Project team included Waypoint, which had been delegated to provide advisory services and act as the Project manager, and The Architectural Team (TAT), which was assigned to provide architectural design work. Both Waypoint and TAT had previously worked with Beacon, while Cruz Construction and Beacon had never previously partnered on construction work.

On April 2, 2018, Beacon solicited general contractor bids for the Camden phase of the Project by sending a Request for Proposal (RFP) to three entities, among them Cruz Construction, consistent with BHA's RFP, which required Beacon to "issu[e] a Request for Proposals including schematic design documents to at least three general contractors (GCs) for Guaranteed Maximum Price (GMP) Proposals." Starr Decl. (Dkt. # 40), Ex. 13, § F. After receipt of the bids, Beacon chose Cruz Construction as the general contractor for the Camden phase. Neither the RFP that Beacon sent out for selection of the general contractor for the Camden phase, nor Cruz Construction's responses to that RFP made any reference to the Lenox phase or contained any bidding information related to services to be performed at

Lenox. Beacon and Cruz entered into a contract on December 10, 2018, for Cruz to be general contractor of the Camden phase of the Project.

After construction on the Camden phase began in January of 2019, Beacon began receiving complaints from TAT, Waypoint, and Beacon's own team about Cruz Construction's performance as general contractor. These included Cruz Construction's failure to provide completed submittals prior to beginning construction work; failure to maintain construction logs (*e.g.*, RFI logs, change order logs) and other documentation; installation of products other than those specified in the submittals; Project delay; lack of timely communications with TAT, Waypoint, and Beacon; and poor workmanship. In March of 2019, Goodman provided John Cruz with some of the negative performance reports and warned Cruz of the need for improvement.

On September 18, 2019, Goodman informed Cruz that Cruz Construction would not be invited to bid on the larger Lenox phase of the Project. Cruz Construction responded by stopping any pre-construction work on the Lenox phase. Beacon, at the time of filing its motion for summary judgment, had not received an invoice from Cruz Construction for its Lenox phase pre-construction work.

After reviewing a new round of bids to perform general contractor work on the Lenox phase (from which Cruz Construction was excluded), Beacon and its development team (which included TAT and Waypoint), selected D.F. Pray, Inc., a white-owned company, as the general contractor for the Lenox phase.

Approximately four years after the fact, Cruz Construction filed this lawsuit in Suffolk Superior Court. Beacon promptly removed the case to the federal district court. The Complaint is in six counts: (1) breach of implied contract; (2) promissory estoppel; (3) quantum meruit; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of the Unfair Business Practices Act, General Laws Chapter 93A; and (6) violation of the Federal Civil Rights Act, 42 U.S.C. § 1981.

**LEGAL STANDARD**

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary

judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The moving party bears the initial burden of establishing the absence of any material disputes of fact, after which "the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010). In evaluating a motion for summary judgment, the court draws "all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." *Shafmaster v. United States*, 707 F.3d 130, 135 (1st Cir. 2013).

## DISCUSSION

### Breach of Implied Contract (Count I)

Cruz Construction alleges that Beacon, by refusing to include Cruz Construction from the bidding to serve as general contractor on the Lenox phase of the Project, breached an implied contractual promise to hire Cruz Construction as the general contractor for the Lenox phase of the Project. Compl. ¶ 21. According to John Cruz, in about July of 2016, he received a

telephone call from Goodman, who allegedly told him that "Beacon was inviting Cruz Construction to be the general contractor member of the Lenox/Camden Project Team." Cruz Aff. (Dkt. # 53) ¶ 11. As a result of his phone conversation with Goodman, Cruz believed that Beacon had promised to engage Cruz Construction as the general contractor for both the Lenox and Camden phases of the Project, so long as Cruz Construction's bid price was less than or within 5% of other bids that Beacon received. *See* Cruz Aff. (Dkt. # 53) ¶¶ 11-17; Dkt. # 50 at 29; Dkt. # 63 at 5.

Goodman, for her part, maintains that she contacted Cruz to ask him only if Cruz Construction would be interested in performing pre-construction services on the Camden and Lenox phases. Goodman Aff. (Dkt. # 45) ¶¶ 5, 6. Goodman contends that she made it clear to John Cruz that, even if Cruz Construction agreed to provide pre-construction services, there was no guarantee that it would be invited to bid for or be chosen as the general contractor for either the Camden or Lenox phases. *Id.* ¶ 6.

Under Massachusetts law, "[a] contract implied in fact requires the same elements as an express contract" — including consideration, mutual assent, and damages — and differs only in the method of expressing mutual assent." *Katz v. Pershing, LLC*, 672 F.3d 64, 74 (1st Cir. 2012), quoting *Massachusetts Eye & Ear Infirm. v. QLT Phototherapeutics, Inc.,* 412 F.3d

215, 230 (1st Cir. 2005). An implied contract "may be inferred from (1) the conduct of the parties and (2) the relationship of the parties. *T.F. v. B.L.*, 442 Mass. 522, 526-527 (2004). It "requires proof that there was a benefit to the defendant, that the plaintiff expected the defendant to pay for that benefit, and that the defendant expected, or a reasonable person should have expected, that he or she would have to pay for the benefit." *Id.* at 527.

Here there is no evidence of the existence of a binding implied-in-fact contract guaranteeing the selection of Cruz Construction as the general contractor for either the Camden or Lenox phases of the Project (much less both), notwithstanding John Cruz's unsupported asseverations to the contrary. "Vague and conclusory statements in an affidavit, do not meet the specificity requirement of Federal Rule 56." *Posadas de Puerto Rico, Inc. v. Radin,* 856 F.2d 399, 401 (1st Cir. 1988). Here, none of the essential elements needed to prove the existence of a contract, including "a meeting of the minds between the parties" and the material terms of the underlying agreement, are present. *See Seifer v. Gov't Emps. Ins. Co.*, 2022 WL 1538276, at *2 (1st Cir. May 13, 2022). During his phone conversation with Goodman, John Cruz does not allege any discussion, much less agreement, about the conditions governing Cruz Construction's services, the materials it would use, the time for performance, or the amount it would be paid for its

work. *See Massachusetts Eye & Ear Infirmary*, 412 F.3d at 230 (holding that "without agreement on the essential terms of the agreement," there can be no implied contract claim).

Moreover, Goodman would not have had the authority to enter into such an agreement with Cruz without first soliciting bids from at least two other potential general contractors (which Beacon had yet to do when Goodman reached out to John Cruz in July of 2016).[1]

Cruz Construction entered a contract with Beacon for general contractor work on the Camden phase of the Project on December 10, 2018. *See* Cruz Camden Contract (Dkt. # 40), Ex. 21 at 1. The executed contract makes no reference to the Lenox phase. *See id.* Nor did the RFP inviting Cruz Construction to make its initial bid make any reference to the Lenox phase or any Lenox-related services. *See* Dkt. # 40, Ex. 16; Dkt. # 40, Ex. 18.[2]

---

[1] It is undisputed that BHA's Request for Proposals # 1206-01, which governed selection of a designated developer of the Lenox/Camden developments, unambiguously made clear that Beacon must "issu[e] a Request for Proposals including schematic design documents to at least three general contractors (GCs) for Guaranteed Maximum Price (GMP) Proposals." Starr Decl. (Dkt. # 40), Ex. 13, § F. In addition, it mandated that "[b]eyond qualifications and cost, the primary criteria for GC selection will be the general conditions, overhead, and project mark-ups." *Id.*

[2] It is telling that when Cruz Construction was invited to submit its initial bid, it never questioned why the RFP was limited to the Camden phase of the Project. *See* Kovel Aff. (Dkt. # 47) ¶ 13. And when Cruz Construction

On this record, there is no basis on which a reasonable juror could find that Cruz Construction had been awarded an implied-in-fact contract for it to serve as the general contractor for the Lenox phase of the Project. The court consequently will allow Beacon's motion for summary judgment as to the claim of breach of implied contract.

**Promissory Estoppel (Count II)**

In the alternative to its contractual claim, Cruz Construction makes an equitable claim of promissory estoppel. *See* Compl. ¶¶ 24-26. To prove a claim of promissory estoppel under Massachusetts law, a plaintiff must allege that:

> (1) a promisor makes a promise which he should have reasonably expected to induce action or forbearance of a definite or substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise.

*Neuhoff v. Marvin Lumber and Cedar Co.*, 370 F.3d 197, 203 (1st Cir. 2004), quoting *Carroll v. Xerox Corp.*, 294 F.3d 231, 242 (1st Cir. 2002); *see also Upton v. JWP Businessland*, 425 Mass. 756, 760 (1997). As Massachusetts courts have emphasized, "[a]n essential element under the promissory estoppel theory is that there be an unambiguous promise and that the party

was excluded from bidding on the Lenox phase, it never protested to Beacon that it believed that Goodman had previously awarded it the general contractor contract for Lenox.

to whom the promise was made reasonably relied on the representation." *Rhode Island Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. 841, 848 (1995).

As previously discussed, no reasonable fact finder would find that Goodman made an "unambiguous" promise to John Cruz that Cruz Construction would be the general contractor for the Lenox phase. *Upton*, 425 Mass. at 760. And, while the reasonableness of a party's reliance on a promise of another is most often a question of fact, it can be one of law, particularly where, as here, the parties involved are of relatively equal knowledge and sophistication. *See Cataldo Ambulance Serv., Inc. v. Chelsea*, 426 Mass. 383, 387 (1998). It would not have been within the realm of reason for John Cruz to rely on his conversation with Goodman as extending a promise that Cruz Construction would be awarded the general contract for both the Camden and Lenox phases, especially given his knowledge of BHA's requirement that Beacon extend invitations to at least three qualified bidders. The court, accordingly, will allow defendants' motion for summary judgment to the claim for promissory estoppel.[3]

---

[3] Beacon also contends that Cruz Construction's promissory estoppel and quantum meruit claims (Counts II and III) are barred by laches. *See* Dkt. # 38 at 32. "The equitable defense of laches will bar a party from asserting a claim if the party so unreasonably delayed in bringing the claim that it caused some injury or prejudice to the defendant." *Polaroid Corp. v.*

**Quantum Meruit (Count III)**

As a second alternative theory to breach of implied contract, Cruz Construction brings a claim for quantum meruit, alleging that because Beacon utilized Cruz Construction's pre-construction and construction work services, Cruz Construction conferred a measurable benefit upon Beacon with the reasonable expectation of compensation in the form of the profit to be realized by Cruz Construction as the general contractor on both the Camden and Lenox phases of the Project. *See* Compl. ¶ 29.

In Massachusetts, to recover under a theory of quantum meruit, the plaintiff must prove: "(1) that it conferred a measurable benefit upon the defendants; (2) that the [plaintiff] reasonably expected compensation from the defendants; and (3) that the defendants accepted the benefit with the knowledge, actual or chargeable, of the claimant's reasonable expectation."

---

*The Travelers Indem. Co.,* 414 Mass. 747, 759-760 (1993); *see also Costello v. United States,* 365 U.S. 265, 282 (1961). In Massachusetts, a six-year statute of limitations applies to unjust enrichment claims based on the same underlying facts as claims for breach of contract and breach of the implied duty of good faith and fair dealing. *See* Mass. Gen. Laws, ch 260, § 2; *Micromuse, Inc. v. Micromuse*, PLC, 304 F. Supp. 2d 202, 209 (D. Mass. 2004). Here, the four years that elapsed between Cruz's alleged injury (not being invited to bid on the Lenox phase) and Cruz's Complaint falls within the presumptively allowed six-year limitation period. The court rejects Beacon's suggestion that the court apply laches, *see* Dkt. # 38 at 33, because there is nothing here to suggest that there are "extraordinary circumstances" in which "undue delay combines with prejudice," *In re Am. Bridge Prods., Inc.*, 599 F.3d 1, 6 (1st Cir. 2010).

*Finard & Co., LLC v. Sitt Asset Mgmt.*, 79 Mass. App. Ct. 226, 229 (2011). To recover under quantum meruit in a construction case, "a contractor must prove both substantial performance of the contract and an endeavor in good faith to perform the work fully." *G4S Tech. LLC v. Mass. Tech. Park Corp.*, 479 Mass. 721, 735 (2018). The amount of recovery "is the fair and reasonable value of material and labor supplied to the benefiting party." *Id.* at 735. The nonbreaching party is "entitled to be made whole and no more." *Id*, quoting *Ficara v. Belleau*, 331 Mass. 80, 82 (1954).

Here, it is undisputed that Beacon paid Cruz Construction in full for its pre-construction services and general contracting work on the Camden phase. *See* Crowley Decl. (Dkt. # 52), Ex. 7 at 38:8-39:1; Dkt. # 50 at 22. Cruz Construction performed only some pre-construction services on the Lenox phase of the Project and then ceased work in September of 2019 once Beacon informed it that it would not be invited to bid on the Lenox contract. Kovel Aff. (Dkt. # 47) ¶ 8. Both parties had the reasonable expectation that Cruz Construction would be compensated for its pre-construction work at Lenox. The court understands that Cruz Construction has not received payment for its Lenox pre-construction services, but that Beacon has "always been prepared to pay" Cruz Construction once Cruz Construction submits an

invoice. *See* Dkt. # 38 at 31. The court will find the claim moot, given Beacon's representation, which the court accepts as binding.

**Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV)**

Cruz Construction brings a claim for breach of the implied covenant of good faith and fair dealing, alleging that Beacon misled Cruz Construction into believing and expecting that it would be the general contractor for the Lenox project. *See* Compl. ¶ 33. Massachusetts law implies a covenant of good faith and fair dealing in every contract; that is, both parties to a contract implicitly agree to do nothing "that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 381 (2004), quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991). However, the covenant cannot "be invoked to create rights and duties not otherwise provided for in the existing contractual relationship." *Uno Rests., Inc.*, 441 Mass. at 385.

Having established that no implied contract existed between Cruz and Beacon for the Lenox phase of the Project, it follows that "there can be no derivative implied covenant of good faith and fair dealing applicable to these parties." *See Massachusetts Eye & Ear Infirmary*, 412 F.3d at 230 (holding that without a contract, there is no covenant to be breached because the

implied covenant of good faith and fair dealing governs conduct of parties only after they have entered into a contract).

**Violation of Chapter 93A (Count V)**

Cruz Construction alleges that Beacon engaged in unfair and deceptive practices of trade or commerce in violation of Mass. Gen. Laws ch. 93A, § 9, because Beacon refused to enroll Cruz Construction as the "general contractor member" of the Lenox project team, prohibited it from bidding, negotiating, or otherwise competing for the Lenox phase general contract, and replaced it with a "white-owned entity, D.F. Pray." Compl. ¶ 36.

Such a claim "requires a showing of conduct that (1) falls within 'the penumbra of some common-law, statutory, or other established concept of unfairness'; (2) is 'immoral, unethical, oppressive, or unscrupulous'; and (3) causes 'substantial injury to [consumers or other businesspersons].'" *Gattineri v. Wynn MA, LLC*, 93 F.4th 505, 511 (1st Cir. 2024). If a Chapter 93A claim is "derivative of other claims which fail as a matter of law, the Chapter 93A claim must also fail." *Id.* at 511*; see Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80, 86 (2004).

Here, Cruz Construction's Chapter 93A claim derives entirely from the same set of facts as its breach of an implied contract promising it the Lenox phase general contract. Because this claim for breach of implied contract

failed, meaning that no enforceable contract with respect to the Lenox phase existed between the parties, so too does the Chapter 93A claim. *See Gattineri*, 93 F.4th at 511.

**Violation of 42 U.S.C. § 1981 (Count VI)**

Lastly, Cruz Construction alleges that by denying it, a black-owned entity, the opportunity to bid, negotiate, or otherwise compete for the Lenox general contractor work, Beacon violated the Federal Civil Rights Act, 42 U.S.C. § 1981. *See* Compl. ¶ 41.

Section 1981 protects the right of all persons within the United States to make and enforce contracts without respect to race. 42 U.S.C. § 1981. To state a claim under § 1981, a plaintiff must show that (1) he is a member of a racial minority; (2) the defendant discriminated against him based on his race; and (3) the discrimination implicated one or more of the activities listed in the statute, including the right to make and enforce contracts. *Hammond v. Kmart Corp.*, 733 F.3d 360, 362 (1st Cir. 2013). However, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020).

There is no direct or circumstantial evidence from which a fact finder could reasonably infer that "but for" Cruz's race, Beacon would have invited

Cruz Construction to bid, negotiate, or otherwise compete for the Lenox general contractor work. *See id.*; *Privler v. CSX Transportation Inc.*, 2021 WL 3603334, at *18 (N.D.N.Y. Aug. 13, 2021) (granting summary judgment because plaintiff failed to provide any direct or circumstantial evidence from which a fact finder could reasonably infer that plaintiff's Jewish race was a but-for cause of defendant's decision not to hire him). Beacon has provided a legitimate, nondiscriminatory reason for refusing to extend an invitation to Cruz Construction to bid on the Lenox phase – Cruz did not perform well on the Camden project and the Lenox project was significantly larger in size, scope, and complexity than the Camden project. *See* Goodman Aff. (Dkt. # 45) ¶ 19. Beacon received numerous complaints from its internal development team, TAT, and Waypoint about Cruz Construction's poor performance on the Camden phase, its lack of timely communication, the installation of erroneous products, and the failure to maintain construction logs, all of which resulted in delay on the overall project.[4] *See e.g.*, Starr Aff.

[4] Cruz Construction argues that Beacon, Waypoint, and TAT did not investigate who was actually at fault for these delays and has proffered a putative expert report suggesting that not all the delays on the Camden phase were its fault. *See* Dkt. # 50 at 22; Crowley Decl. (Dkt. # 52), Ex. 44. However, Cruz Construction's report acknowledges that Cruz Construction was responsible for at least some of the delays at Camden. *See* Crowley Decl. (Dkt. # 52), Ex. 44 at 6 ("15 calendar days are concurrent delays (*i.e.*, both parties [Beacon and Cruz] are responsible)."). In addition, despite the competing narratives of whose fault the delays actually were, the court's task

(Dkt. # 40), Ex. 35 at 1-2; *Id.*, Ex. 44 at 2; *Id.*, Ex. 45 at 3. Beacon team members also reported that because of the deadlines Cruz Construction missed, there were serious challenges in dealing with the relocation specialists, the BHA, the City of Boston, and residents in the Camden apartments.[5] *See* Irish Aff. (Dkt. # 46) ¶ 6-9; Bouton Aff. (Dkt. # 42) ¶ 5. Waypoint and TAT, who were to be involved in the Lenox phase of the

---

"is limited to determining whether [Beacon] believed in the accuracy" of the complaints. *Espinal v. Nat'l Grid NE Holdings 2, LLC*, 693 F.3d 31, 35 (1st Cir. 2012) (holding that a court does "not sit as a super-personnel department that reexamines an entity's business decisions.") There is no evidence that Beacon or its employees who complained about Cruz Construction's poor performance did not reasonably believe the complaints to be true.

Cruz Construction also contends that the court should find as a matter of law that Beacon has "waived any complaint" about Cruz Construction's poor performance because Beacon paid Cruz Construction in full for the work it performed on the Camden phase. Dkt. # 50 at 22. However, Cruz Construction cites to no case law that forecloses a party from relying on complaints as a non-discriminatory justification for its actions. The waiver cases Cruz Construction cites are inapposite as they involve contract actions in which plaintiffs sought damages arising out of defendants' alleged failure to perform fully the contract after plaintiffs made final and full payment of the contract price. *See, e.g.*, *Barton v. Morin*, 281 Mass. 98, 99 (1932); *Buttrick Lumber Co. v. Collins,* 202 Mass. 413, 419 (1909).

[5] For example, Beacon Senior Vice President of Property Management, Toya Irish, who was often on site at Camden, attested that her "worst experience working with a contractor was with Cruz Construction." Irish Aff. (Dkt. # 46) ¶ 10. She complained that Cruz Construction failed to meet its deadlines for tenant relocations, frequently shut off the residents' power during construction without prior communication to the residents, and failed to return her phone calls. *Id.* ¶¶ 7-9.

project, informed Beacon that, based on their experience with Cruz Construction on the Camden phase, Cruz Construction did not have the capability to successfully complete the much larger Lenox phase. Goodman Aff. (Dkt. # 45) ¶¶ 15-16. There is no evidence to question the sincerity of these complaints or Beacon's good faith belief in their truth, much less to suggest that race played any role in Beacon's decision to discontinue work with Cruz Construction.[6]

Thus, the court will allow Beacon's summary judgment motion as to the § 1981 claim.

## ORDER

For the foregoing reasons, Beacon's motion for summary judgment is ALLOWED. Summary judgment on Count III is moot given Beacon's representation, which the court accepts as binding. Cruz Construction is ordered to submit an invoice within 60 days of this order to Beacon for the preliminary work it performed on the Lenox phase of the Project. Beacon

[6] It is worth remembering that it was Beacon that initially recruited Cruz Construction to the Project because it was a minority owned company, not the other way around.

has 60 days upon receipt to review and pay the invoice. The clerk will enter judgment for Beacon on all counts and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE